**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **SZUCH FISHERY 12, LLC**, <br> 921 Park Colony <br> Curtice, OH 43412 <br><br> **MICHAEL SZUCH**, and <br> 921 Park Colony <br> Curtice, OH 43412 <br><br> **HOLLY SZUCH**, <br> 921 Park Colony <br> Curtice, OH 43412 <br><br>      **Plaintiffs,** <br><br> v. <br><br> **STATE OF OHIO**, <br> **OHIO DEPARTMENT OF NATURAL** <br> **RESOURCES, DIVISION OF WILDLIFE**, <br> **MARY MERTZ**, Director, <br> **Department of Natural Resources** <br> **Sued in both her individual and official** <br> **capacities** <br> 2045 Morse Rd., <br> Columbus, OH 43229 <br><br> And, <br><br> **KENDRA WALKER**, Chief of Division of <br> Wildlife, <br> **Ohio Department of Natural Resources** <br> **Sued in both her individual and official** <br> **capacities** <br> 2045 Morse Rd., Bldg. G <br> Columbus, OH 43229 | Case No.: _____ <br><br><br><br> Judge <br><br><br><br> **COMPLAINT WITH JURY DEMAND** <br> **ENDORSED HEREON** <br><br><br><br> ERIK J. WINELAND (0072088) <br> ROBERT J. BAHRET (0014985) <br> **Rohrbacher Trimble &** <br>    **Zimmerman Co., LPA** <br> 405 Madison Ave., 8th Floor <br> Toledo, OH  43604 <br> Phone (419) 248-2600 <br> Fax (419) 248-2614 <br> ewineland@rtz-law.com <br> rbahret@rtz-law.com <br> *Attorneys for Plaintiffs* |

1

| | |
|---|---|
| **MATTHEW LEIBENGOOD**, Supervisor, Division of Wildlife, **Ohio Department of Natural Resources Sued in both his individual and official capacities** 305 E. Shoreline Dr., Sandusky, OH 44876 <br><br> And <br><br> **TRAVIS HARTMAN**, Division of Wildlife, **Ohio Department of Natural Resources Sued in both his individual and official capacities** 305 E. Shoreline Dr., Sandusky, OH 44876 <br><br><br>     **Defendants.** | |

NOW COME the Plaintiffs, by their attorney and state for their complaint as follows:

## I. INTRODUCTION

1. Lake Erie is home to a diverse and valuable population of fish, including walleye and perch, which are important food sources. The fish are shared among the States of Michigan, Ohio, Pennsylvania, and New York, as well as the country of Canada. Fish are allocated among these sovereignties by various treaties.

2. Each sovereignty's allocation is split between sport and commercial fishermen. Both walleye and perch generate significant revenue for the fishing industry both sport fishermen and commercial fishermen wanting larger shares of the allocation.

3. Employees of the Ohio Department of Natural Resources including Defendant Travis Hartman are closely tied to sport fishermen and have expressed their desire to eliminate the commercial fishing industry in favor of the sport fishermen. As such, the ODNR

2

Defendants have employed tactics such as perjury, deliberate violation of court orders and fabrication of evidence to achieve these goals.

## II. JURISDICTION

4.     This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. The action arises under the United States Constitution, including the Fourth, Fourteenth, and First Amendments, and 42 U.S.C. § 1983, as it pertains to violations of Plaintiffs' civil rights by state officials acting under color of state law.

5.     This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367. These claims arise from the same nucleus of operative facts as the federal claims and are thus appropriately brought before this Court.

6.     Venue is proper in the Northern District of Ohio, Western Division, pursuant to 28 U.S.C. § 1391, as a substantial portion of the events giving rise to this action occurred within this district.

## III. PARTIES

7.     Plaintiff, SZUCH FISHERY 12, LLC, is an Ohio limited liability company with its principal place of business located in Curtice, Ohio. Plaintiff SZUCH FISHERY 12, LLC, is engaged in commercial fishing operations on Lake Erie and holds the necessary licenses and permits to conduct such operations.

8.     Plaintiff, MICHAEL SZUCH, is a resident of Curtice, Ohio and is a member and manager of SZUCH FISHERY 12, LLC. He has been a commercial fisherman on Lake Erie for numerous years and possesses extensive knowledge and experience in the industry.

9.     Plaintiff, HOLLY SZUCH, is a resident of Curtice, Ohio and is a member of SZUCH

3

FISHERY 12, LLC. She is actively involved in the operation of the business and has also been engaged in commercial fishing for a significant period.

10. Defendant, STATE OF OHIO, is a sovereign state and is being sued in this matter for the actions of its agencies and employees who are alleged to have violated Plaintiffs' rights.

11. Defendant, OHIO DEPARTMENT OF NATURAL RESOURCES, DIVISION OF WILDLIFE ("ODNR"), is an agency of the State of Ohio responsible for the management and regulation of wildlife and natural resources within the state, including the enforcement of fishing regulations on Lake Erie.

12. Defendant MARY MERTZ is the Director of the ODNR, acting individually and in her official capacity. She is responsible for the overall direction and oversight of the agency.

13. Defendant KENDRA WALKER is the Chief of the Division of Wildlife, acting individually and in her official capacity. She is responsible for the management and operation of the Division of Wildlife.

14. Defendant, MATTHEW LEIBENGOOD, is a Supervisor with the Division of Wildlife, acting in his individual and official capacities. He is also alleged to have been involved in the actions that caused harm to Plaintiffs.

15. Defendant TRAVIS HARTMAN is an employee of the Division of Wildlife, acting in his individual and official capacities. He is alleged to have participated in the conspiracy against Plaintiffs and made defamatory statements.  TRAVIS HARTMAN is the Lake Erie Administrator responsible for the allocation of fish between sport fishermen and commercial fishermen and is also a charter boat captain and member of the Lake Erie Charter Boat Association ("LECBA").

4

16. The State of Ohio, ODNR and Defendants Mertz, Walker, Leibengood, and Hartman are jointly referred as the ODNR Defendants.

## IV. BACKGROUND

17. Plaintiffs are commercial fishing operators who have lawfully operated their business on Lake Erie for many years. They have consistently complied with all applicable laws and regulations and have a reputation for being responsible and ethical members of the fishing community.

18. Beginning 2002, ODNR Defendants, acting under the color of state law, engaged in a pattern of harassment, intimidation, and unlawful actions against Plaintiffs that has continued for over two decades.

19. ODNR Defendants have engaged in a pattern of false accusations against Plaintiffs, initiated baseless investigations, and conducted unlawful searches and seizures of Plaintiffs' property without proper warrants or probable cause.

20. ODNR Defendants have targeted Plaintiffs based on personal animus, discrimination, and retaliation for exercising their constitutional rights. Further, it has been the ODNR Defendants' goal to eliminate commercial fishing and the Plaintiffs from Lake Erie in favor of the Sport Fishing industry. This targeting has been discriminatory and has deprived Plaintiffs of their right to equal protection under the law.

21. Plaintiffs allege that Defendants, particularly the ODNR Defendants, have discriminated against them by treating them differently than other commercial fishermen. This disparate treatment includes applying laws and regulations in a manner that was not applied to, or enforced against, other similarly situated commercial fishermen.

22. ODNR Defendants have made false and defamatory statements about Plaintiffs to third

parties, including other fishermen, regulatory agencies, governing bodies, advisory committees, and the general public. These statements have damaged Plaintiffs' reputation, caused them emotional distress, personal injury, and harmed their business.

23. ODNR Defendants have conspired with each other and with others, including the Ashtabula Prosecutor's office to deprive Plaintiffs of their constitutional rights and to interfere with their livelihood. This conspiracy has involved a coordinated effort to use the power of the state to harass, intimidate, and unfairly target Plaintiffs.

24. Plaintiffs further allege that Defendants Walker and Mertz conspired with Defendants Leibengood and Hartman with a common understanding to remove the Plaintiffs from the Great Lakes Fishery Commission and the Lake Erie Perch Management Advisory Group, and influencing regulations involving the allocation of fish between sport fishermen and commercial fishermen, and to take their property right to their commercial fishing license and the resultant income derived from that license.

25. As a result of Defendants' actions, Plaintiffs have suffered significant financial losses due to lost business, legal fees, and fines. They have also experienced emotional distress, anxiety, personal injury, and damage to their reputation within the fishing community and the broader public.

26. The following events form the basis of Plaintiffs' claims against Defendants:

   a. On or about 2003, Edward Szuch, brother of the Plaintiff Michael Szuch and confidential informant to ODNR, operating under his own commercial license, intentionally exceeded his fishing quota. ODNR informed Plaintiff Michael Szuch that if he accepted the citation for his brother's violation, other partners on the license would not be charged. Plaintiff Michael Szuch agreed, paying a small fine and court costs in Vermillion court to protect the others on the

license. No license revocation resulted from this incident.

b. Around 2004, ODNR began "Operation Yellow Gold," investigating alleged poaching on Lake Erie. It was alleged that commercial fishermen and the commercial fishing industry was underreporting the amount of yellow perch caught. The case relied on two witnesses with significant mental health issues. One witness, Rick Meinke, committed suicide, while the other, Edward Szuch, had a history of mental health problems with suicidal indicators.

c. In order to conceal the weakness of their case, ODNR charge stacked commercial fishing companies with crimes related to felony-racketeering and theft offenses usually reserved for mafia.

   i. "Game wardens usually issue violations as swiftly as cops issue parking tickets, but what the fishermen didn't know was that Ramsey had handed his investigation over to a Cuyahoga County grand jury. They would wait another year, till June 2005, to take their hit -- a litany of felony indictments befitting a New York crime boss: racketeering, theft, forgery, money-laundering. Some were facing up to 15 years behind bars. "You'd think I had an Italian last name or something," says Rich Stinson, owner of Port Clinton Fish. "I don't deal in drugs . . . It's food!" Each of the 13 fishermen and wholesalers pleaded guilty to the charges. In exchange for paying restitution of up to $160,000, they got to go home to their wives.

   https://www.clevescene.com/news/the-battle-for-lake-erie-1496093

d. The purpose in indicting commercial fisherman and their business with felony charges for allegedly "underreporting yellow perch" was to eliminate the entire industry in favor of sportfishermen. ODNR began to work with members of the Ohio legislature to enact laws to eliminate the entire industry.

e. Between 2005-2006, Ohio House Bill 609, sponsored by Representative McGregor, sought to eliminate commercial fishing in Ohio beginning in 2007. Jeff Herrick, manager of the Division of Wildlife's District Three offices, openly and publicly campaigned for the elimination of commercial fishing.

i. "Should the proposed House Bill 609 and companion Senate Bill 351 pass before a new governor takes over in January, the commercial fishing licenses would be bought out by sportsman's dollars for $4 million. The businesses would get to keep all their equipment, and either sell it to Canadian commercial operations, or convert over to charter businesses, as one western basin operator already has. **"There's no doubt the Division of Wildlife thinks this is the right thing to do," said Herrick**. "It'll be a great economic benefit for Ohio. The 40 percent the commercial guys are getting will go to the sport fisherman." (*emphasis added*)

https://www.the-daily-record.com/story/lifestyle/health-fitness/2006/10/15/greed-gets-best-commercial-perch/19579402007/

f. Exercising their First Amendment rights, Plaintiffs played a key role in organizing opposition to this bill and successfully lobbied for its defeat, preserving the livelihoods of commercial fishermen in Ohio.

g. Despite Plaintiff's successful efforts to defeat Ohio House Bill 609, ODNR collaborated with other legislators, resulting in the passage of Senate Bill 77, which expanded ODNR's regulatory authority over commercial fishing. This bill required commercial fisherman to place monitors on their boats, at the fishermen's expense, and instituted a three-strike system. In this three-strike system, ODNR could suspend or terminate the commercial fishing license upon a conviction of certain laws or with felony convictions related to fishing.

h. For a period of three to four years after Operation Yellow Gold was announced, ODNR publicly accused Plaintiff Michael Szuch of being a major poaching suspect, but no charges were ever filed against him. These public accusations caused significant damage to his reputation and the reputation of his company and wife. ODNR uses public accusations as a weapon to ruin the accused's reputation without ever being able to convict them of crimes.

i. In 2008, Plaintiff Michael Szuch was charged as part of "Operation Yellow Gold" after Senate Bill 77 became law, despite having been previously cleared

of any wrongdoing. ODNR intended to use Senate Bill 77 to deprive Michael

Szuch of his livelihood by using the criminal charges to terminate his

commercial licenses.

i.   If convicted, Szuch faces a maximum of 10 years in prison and a restitution value of more than $1.4 million for 56,424 pounds of yellow perch that wildlife investigators say were illegally caught in 2002 and 2003. Ohio legislation approved in January would require the court to permanently retire Szuch's three commercial fishing licenses.

https://www.cleveland.com/outdoors/2008/08/curtice_man_arraigned_on_ fish.html#:~:text=If%20convicted%2C%20Szuch%20faces%20a%20maxi mum%20of,require%20the%20court%20to%20permanently%20retire%20 Szuch%27s

j.   In 2009, Plaintiff Michael Szuch stood trial in the Common Pleas Court of

Lorain, Ohio and was found not guilty of all charges related to "Operation

Yellow Gold." He was the only commercial fisherman that fought these illusory

charges by the ODNR. He did this at the risk of spending 10 years in prison and

a fine of over 1.4 million dollars. This complete acquittal further demonstrated

the baseless nature of the accusations against him and the lengths ODNR would

go to eliminate the commercial fishing industry.

i.   A Lorain County judge acquitted a commercial fisherman Friday who was accused of poaching more than $100,000 of yellow perch from Lake Erie. The case was part of a two-year poaching investigation that led to the convictions of about a dozen other fishermen. But Michael Szuch left the Lorain County Justice Center free to continue his commercial fishing business after Judge Edward M. Zaleski found him not guilty of theft and falsifying documents, both third-degree felonies. Szuch, who had waived his right to a jury trial, was the only fisherman the Ohio Department of Natural Resources' investigation targeted who was not convicted of a crime.

https://www.cleveland.com/metro/2009/08/fisherman_acquitted_in_lake_e r.html

k.   ODNR's entire case rested upon alleged statements of two mentally ill

individuals with a strong bias against commercial fishermen. ODNR charged these fisherman felonies normally reserved for drug traffickers and murders to strong arm them into taking plea deals. Using these unfounded charges ODNR attempted to eliminate commercial fishing altogether in Ohio. When the efforts, led by Plaintiff Holly Szuch, helped defeat the ODNR, it instituted changes in the law that greatly increased the regulatory burden on these fishermen and instituted the three-strike law. As punishment for Holly Szuch's efforts, ODNR indicted Michael Szuch six years after the Operation Yellow Gold investigation.

l.  A period of approximately five years without significant issues between Plaintiffs and ODNR ended when Plaintiff Holly Szuch filed a sexual harassment complaint against ODNR Officer Jason Hadsell with recently appointed supervisor Jeff Collingwood in 2015. Her complaint detailed a pattern of inappropriate behavior and comments by Officer Hadsell. Supervisor Collingwood failed to investigate Officer Hadsell's alleged sexual harassment and failed to document any investigation because he did not believe that "she was serious." ODNR Defendants swept the incident under the rug. Harassment is a tool used by the ODNR as a means of intimidating the Plaintiffs out of the commercial fishing industry.

m.  Governor Strickland appointed Plaintiff Holly Szuch to the Great Lakes Fishery Commission ("GLFC"). This was a prestigious appointment for Holly Szuch. In this role she represented the commercial fishing industry as a stakeholder in Lake Erie and offered her input and recommendations on programs and activities related to Lake Erie and the allocation of fish to the commercial

10

fishing industry.

n. Holly Szuch was also appointed to the Lake Erie Perch Management Advisory Group ("LEPMAG"). It facilitates communication between fishery managers and various stakeholders, including recreational and commercial fishers related to the allocations of fish within Lake Erie. Holly Szuch was a strong advocate for rights of commercial fisherman and therefore a threat to the ODNR Defendants and their goal to abolish commercial fishing in Lake Erie.

o. In 2015, Officer Jason Hadsell visited Plaintiffs' dock in Cleveland and complained about Plaintiff Holly Szuch's method of inputting net tag data. Officer Hadsell and Plaintiff Holly Szuch had a heated discussion regarding the earlier harassment incident in Ashtabula. Officer Hadsell recorded the conversation, but the audio recording was later deleted, raising concerns about potential evidence tampering.

p. In February of 2016, Plaintiffs attempted to renew their fishing licenses at the ODNR office in Sandusky. Plaintiffs became members of Wise Fishery LLC, which held two fishing licenses. Supervisor Jeff Collingwood and the ODNR attempted to prevent Plaintiffs from listing their names on the licenses and renewing them. Plaintiff Holly Szuch reiterated her harassment complaint against Officer Hadsell to Supervisor Jeff Collingwood in the presence of Plaintiff Michael Szuch, Defendant Travis Hartman, and others. Supervisor Collingwood said he would "look into it" but failed to take any meaningful action.

q. In May 2016, Officer Jason Hadsell visited Plaintiffs' dock in Lorain, Ohio and questioned them about the transfer of fish quota to the Wise Fishery LLC

11

licenses. This continued scrutiny and inquisition by Officer Hadsell contributed to a hostile and intimidating atmosphere for the Plaintiffs.

r.    In August 2016, Plaintiffs were arrested by Officer Jason Hadsell for failing to weigh fish dockside in violation of RC 1533.343 and OAC 1501:31-3-13(c), in Ashtabula. The Plaintiffs had weighed their fish in the river as they approached their dock. They weighed the fish again in front of Officer Hadsell before they left the dock. There was no discrepancy between the two weights. Officer Hadsell and the ODNR attempted to use this incident to charge the Plaintiffs with a strike offense and suspension their license for 30 days. Plaintiffs pled to a reduced charge of Hunting Deer with detached tag, a violation of RC 1531.02 with no strike offense. Plaintiffs did this as a business decision to limit the several thousand dollars in legal bills they would have paid had the case gone to trial.

s.    In February 2017, at an annual ODNR meeting with the fishing industry, Joe Smith asked Supervisor Jeff Collingwood about fish unloading procedures, referencing Plaintiffs' arrest in Ashtabula. Supervisor Collingwood stated that other fishermen should not be concerned, and that the issue "only pertains to the Szuch's." Rich Stinson, owner of Port Clinton Fish, asked Supervisor Collingwood the same question and received the same response.

t.    In July 2017, Plaintiffs were again arrested by Officer Jason Hadsell for a net tag inputting issue that occurred 23 months prior to their arrest. Supervisor Jeff Collingwood was present when the tickets were issued in Cleveland. Defendants again attempted to use Senate Bill 77 to revoke and/or suspend their commercial fishing license.

12

u.   Hadsell and Collingwood fabricated the charges related to the net tag inputting issue, and that no such law existed. This was confirmed in 2024 when Officer Matt Fisher handed Plaintiffs a "Catch Reporting System Situational Instructions."  These instructions were guidelines of the preferred method of managing and reporting net tags on commercial fishing nets. These guidelines were proof that ODNR fabricated charges against the Plaintiffs.

v.   In the Fall of 2017, a meeting occurred at the ODNR office with representatives from ODNR, the Attorney General's office, Plaintiffs, and their attorneys. The Attorney General's office offered to settle the matter for a minor fine related to an old "misuse of a metal tag" law, with no license action.

w.   At this meeting, Supervisor Collingwood admitted that he did not file Plaintiff Holly Szuch's 2015 harassment complaint, because he did not believe she was serious.

x.   On April 28, 2020, State of Ohio - Office of the Inspector General - Report of Investigation – Date of Report: - File ID No.: 2019-CA00007 was issued. In this report, the Ohio Inspector General determined that various high-level employees were taking improper benefits from the Sport Fishing/Charter boat fishing industry including numerous fishing trips worth thousands of dollars in aggregate. The inspector general found reasonable cause to believe that wrongful act occurred. Travis Hartman was named in this report as one of the employees committing these wrongful acts. ODNR Defendants and Mr. Hartman have retaliated against the Plaintiffs for their belief that Plaintiffs had something do with whistleblowing to the Ohio Inspector General.

y.   In April 2020, ODNR alleged that the Plaintiffs killed and disposed of

13

numerous gar fish. Officers Bury and Brockman allegedly spent days filming this activity but failed to film one dead fish. Officers Brockman and Good then attempted to serve a search warrant on the Plaintiffs for photos on Holly Szuch's cell phone. This warrant only permitted the officers to seize the photos on her cellphone and not search any property. The officers concealed this fact from the Plaintiffs and Officer Good did not permit the Plaintiffs to review the search warrant nor wait for their attorney.

z.  Officer Brockman entered the Plaintiffs property to search for the cellphone without the consent of the Plaintiffs. Unknown to Officers Brockman and Good, the entire incident was recorded by the Plaintiffs security video. Officer Brockman then tampered with government records by falsely certifying on her investigative report that she did not enter the Plaintiffs' building.

aa.  In April 2020, Plaintiffs were arrested. The ODNR issued twenty-seven (27) separate criminal complaints. Twenty-one (21) complaints were filed against a sister company, Szuch Fishery, Inc. which included ten (10) charges pursuant to RC §§1531.02/1501:31-13-01(F) disposing a dead fish in the lake; ten (10) charges pursuant to RC §1531.29 for placing garbage in the lake; and one charge pursuant to RC §§1533.63/1501:31-3-02(A) harming a muskellunge. Two (2) complaints were filed against Michael Szuch pursuant to §1531.29 for placing garbage in the lake and RC §§1531.02/1501:31-13-01(F) disposing of a dead fish in the lake. Two (2) complaints are filed against Holly Szuch pursuant to §1531.29 placing garbage in the lake and RC §§1531.02/1501:31-13-01(F) disposing a dead fish in the lake. Two (2) complaints were filed against Szuch employee Joseph Imery, Jr. pursuant to §1531.29 placing garbage

14

in the lake and RC §§1531.02/1501:31-13-01(F) disposing a dead fish in the lake. The majority of these charges applied to sport fishermen and not to commercial fishermen. Despite this fact, the ODNR Defendants criminally charged the Defendants for this issue.

bb. Immediately upon filing their complaint, ODNR issued a news release with false accusations intended to ruin and disparage the Plaintiffs' reputation and standing with the fishing industry, GLFC and LEPMAG. ODNR stated that "The Ohio Department of Natural Resources (ODNR) Division of Wildlife has charged Szuch Fishery, Inc. with wildlife violations after investigators observed abuse and wanton waste of highly prized game fish on March 31, 2020." They also stated that "Division of Wildlife investigators observed and recorded Szuch employees intentionally injure a rare trophy-sized muskellunge after it was removed from a commercial fishing net in western Lake Erie." ODNR had no evidence that the muskellunge was killed or injured or the state of mind of the Plaintiffs.

cc. Newspapers throughout Ohio and as far away as Pittsburg Pennsylvania published stories containing these false accusations. Social media posts in numerous outlets, including Twitter and Facebook, linked to the ODNR's news release or stories based on this new release. One Facebook post contained 355 comments, and 510 shares related to the ODNR's false and inflammatory accusations. Most of the comments were negative toward the Plaintiffs.

dd. ODNR held out these allegations as fact and failed to inform the public that the Defendants were innocent until proven guilty. ODNR's posts led to the Defendant's home address being made public and to death threats. Fin Fur and

15

Feather's (a local fishing store) Facebook page reprinted the ODNR Facebook post. Greg Johnson commented on this post by posting a link that displayed the Szuch's home address. Another post read "death sentence" followed by a raging emoji.

ee. Because of the social media threats against the Plaintiffs, their attorney took the extraordinary step to seek out a protective order to prevent the ODNR from making further false and defamatory statements while the criminal litigation progressed. The State consented to this order, and it was approved by the court.

ff. After this protective order was placed to prevent the ODNR and its employees from making any extrajudicial statements, Defendant Travis Hartman and other ODNR employees intentionally violated the order by making false statements and accusations to members of the GLFC with the intention to have Holly Szuch removed from the Commission.

gg. In October 2020, Officer Matt Fisher and Supervisor Matt Leibengood inspected Plaintiffs' fish in Curtice, Ohio. Plaintiff Holly Szuch complained to Supervisor Leibengood that Officer Brian Bury was violating a gag order and disclosing Plaintiffs' catch information to a competitor, Grant Steinson. Plaintiff Holly Szuch stated that Officer Bury was using his position to harm Plaintiffs' business by giving proprietary information to their competitor. Supervisor Leibengood addressed this issue beginning in 2021, by instructing ODNR officers not to share proprietary fish catch information.

hh. In March 2021, Plaintiff Holly Szuch was removed from a position she held for 11 years with the Great Lakes Fishery Commission (GLFC) because of accusations from Defendants ODNR and Travis Hartman that intentionally

16

violated the May 2020 gag order from the Oregon Municipal Court. This resulted in a profound loss of reputation for not only Holly Szuch but also Michael Szuch in the fishing industry.

ii. In April 2021, a suppression hearing was held. The Oregon Municipal Court found that Officer Kelsy Brockman lied under oath and on official governmental records. The Trial Court stated that a video showed that Officer Kelsy Brockman had entered into the Szuch's building, without a warrant. Officer Brockman denied doing so in sworn testimony and on her written reports. As a result, the Court took the extraordinary step and suppressed all evidence from the Defendants cell phone.

jj. The trial was held in August 2021. The Oregon Municipal Court found all the Defendants not guilty on all 27 counts. In its decision, the Court stated that ODNR misapplied the law in its attempt to seek conviction of Michael and Holly Szuch and a revocation of their licenses.

kk. In January 2022, Defendant Travis Hartman continued his attempts to have Plaintiff Holly Szuch removed from LEPMAG. Hartman continued to make libel and defamatory statements against the Defendants claiming that the Oregon Municipal Trial Court misinterpreted the law.

ll. RC 1533.641 permanently revokes all commercial fishing licenses and the ability to handle commercial fish upon the conviction of felony related to commercial fishing. ODNR Defendants including Matthew Leibengood and Ashtabula County Prosecutor's Office including Matthew Hebebrand conspired to present false evidence to secure felony indictments against the Plaintiffs to permanently revoke their ability to commercial fish and make a living.

17

mm.    Prior to the establishment of probable cause, Defendants ODNR, Matthew Leibengood, Ashtabula County Prosecutor's office, and Prosecutor's Hebebrand and Fortunato conspired to charge the Plaintiffs with felony charges based on falsified evidence. Using a form completed by an ODNR employee Matthew Faust, Defendants accused the Plaintiffs of completing this form with alleged false statements related to one walleye fish. They jointly presented this false information to a grand jury to secure a felony indictment.

nn.    In the alternative, the Ashtabula County Prosecutor's office and the ODNR presented false evidence to the grand jury that one or all of the Plaintiffs altered data on an acoustic telemetry tag. Alteration of this data would provide probable cause for the charge of tampering with records, a felony in the third degree.

oo.    In June 2023, Felony charges were filed in Ashtabula court. Michael Szuch, Holly Szuch and Szuch Fishery 12, LLC were charged with 5 counts of RC 1533.63 – legal length and weight of certain fish. The State alleged that all the Defendants took one Walleye fish on a commercial fishing boat on August 26, 2021. However, this boat was thoroughly inspected when it returned to the dock that day by the Ohio Department of Natural Resources (ODNR) and no walleye fish was found.

pp.    The Defendants were also charged with three counts of RC 2913.42(A)(1) and 2913.42(B)(4) – Tampering with Records. The State falsely alleged that Defendants "did falsify, remove, conceal or alter data, computer software or records kept by or belonging to a state or federal government entity by removing a telemetry tag, constituting data, computer software or record, from a walleye

18

in Lake Erie and falsified, concealed or altered the data, computer software or record therein." However, the Defendants never had any evidence that any data was falsified, concealed, or altered.

qq. Ironically, the ODNR made false statements on "records kept by the state" to secure their grand jury indictment. First, Defendant Matthew Leibengood falsely stated in his Investigatory Case Report dated December 7, 2022, that Michael Szuch reported to ODNR biologists that he caught a tagged fish. Second, Defendant Leibengood made false statements claiming that Michael Szuch "falsified data when [he] reported the catch method, location, and date to a fisheries biologist." The Defendants later admitted, in court pleadings, that Michael Szuch never had any communication with their fisheries biologist.

rr. The ODNR and Ashtabula Assistant Prosecutor Matthew Hebebrand worked together with common intent to secure felony convictions against the Defendants and take away their ability to commercial fish prior to their presentation to the grand jury. They fabricated testimony presented to the grand jury that alleged that Michael and/or Holly Szuch completed a "Lake Erie Walleye Ecology and Migration Telemetry" form and submitted this form to the ODNR. However, the ODNR defendants knew that their own employees completed this form.

ss. Soon after their initial appearance of the Plaintiffs' counsel challenged the indictment and evidence that supported the basis of the felony indictment. Plaintiffs filed motions to compel discovery, Motion for bill of particulars, Motion for sufficient indictment and Motion to dismiss the felony indictment. In particular, the Plaintiffs challenged the language of indictment, the

19

fabrication of evidence and the fact that the ODNR and Ashtabula Prosecutors office lacked evidence to support the indictments and establish probable cause.

tt. In an effort to challenge the various motions filed by the Plaintiffs, Ashtabula County Prosecutors Christopher Fortunato and Matthew Hebebrand along with the ODNR Defendants continued to make false representations to the Ashtabula Trial Court related to the basis of the felony charges. On August 31, 2023, Ashtabula County Prosecutors Fortunato and Hebebrand falsely represented to the Court that now Holly Szuch had completed the "Lake Erie Walleye Ecology and Migration Telemetry" form. At that time, they knew that Matthew Faust of the ODNR had completed that form that formed the basis of the felony charge. On October 3, 2023, Prosecutors Fortunato and Hebebrand filed their Response In Opposition to Defendants Motion for Severance. In this Response, they intentionally and falsely represented to the Court that "The form, completed by Holly Szuch, provided the following information: On the line next to "Date Caught:" defendant wrote: "1/29/2022." On the line next to "Location Caught: "defendant wrote: "near Rattlesnake." On the line next to "Were you fishing? (circle one) If *yes then are you* a: recreational or commercial fisher?" defendant circled" recreational" instead of commercial. Defendant wrote "9209" on the line next to "Transmitter ID." On the line next to "External Tag ID:" defendant wrote: "06863 present." On the line next to "Fish Length (inches)" defendant wrote: "-22 or 23." October 3, 2023, State of Ohio Response at 3

uu. ODNR defendants including Matthew Leibengood, and Ashtabula Prosecutors Hebebrand and Fortunato conspired to conceal key evidence from the Plaintiffs

20

including acoustic telemetry tag that was a key piece of their prosecution. Defendants claimed that the tag had been destroyed when it had not.

vv.  On August 31, 2023, Prosecutors Fortunato and Hebebrand represented in writing to the court that they had turned over all discoverable materials in criminal prosecution of Plaintiffs. However, over a year later on October 29, 2024, the Ashtabula Prosecutors office and the ODNR dumped over 6000 pages of documents of evidence for use at trial.

ww.  After representing to the Court for over one year that the acoustic telemetry tag had been destroyed, Defendant Matthew Leibengood made ODNR's first written request to Innovasea to locate the whereabouts of this key piece of evidence on October 29, 2024. This was weeks before trial. The acoustic telemetry tag was a proprietary device that would have required a specialist to extract and analyze the date. This left not time for the Plaintiffs to find an expert to dispute the State's theory of the case.

xx.  In January 2025, the Ashtabula County Prosecutor's office attempted to dismiss all charges against the Defendants with an order noting that they had probable cause to indict the Plaintiffs. The court rejected this Order and approved a dismissal without stating the State of Ohio had probable cause to indict the Plaintiffs. This was 17 months after the June 2023 indictment. Plaintiffs were severely injured by the efforts of the Defendants to prosecute them under fabricated evidence for felony charges including attorney fees, loss of business opportunities, medical issues, loss of consortium and other damages.

yy.  On or about February 4, 2025, Defendant Mertz and Walker conspired with the other ODNR defendants to fabricate false evidence and falsely accuse the

21

Plaintiffs of wrongful acts to justify Holly Szuch's removal from LEPMAG and deny the Plaintiffs ability to challenge the ODNR's allocation of perch to commercial fisherman in violation of her constitutional rights.  Defendant Walker signed a letter removing Ms. Szuch from the committee.

## V.  CAUSES OF ACTION

### COUNT ONE

### Violation of 42 U.S.C. § 1983 – First Amendment Retaliation

### Against ODNR Defendants Mertz, Walker, Leibengood, Hartman in their Individual Capacities

27. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

28. Defendants Mertz, Walker, Leibengood, and Hartman, while acting under color of state law, took adverse actions against Plaintiffs in retaliation for Plaintiffs exercising their clearly established First Amendment rights, including but not limited to:

   a. Engaging in protected speech opposing Ohio House Bill 609 and lobbying efforts;

   b. Petitioning for redress of grievances by reporting sexual harassment allegedly committed by Defendant Hadsell;

   c. Engaging in perceived whistleblowing activity related to the Ohio Inspector General's report concerning improper benefits accepted by ODNR employees, including Defendant Hartman; and

   d. Exercising their right to access the courts and defend themselves against prior baseless charges.

29. The adverse retaliatory actions included, but were not limited to, subjecting Plaintiffs to a pattern of harassment, baseless investigations, unwarranted arrests (e.g., 2016 Ashtabula incident, 2017 net tag incident), malicious prosecutions (e.g., 2008 charges,

22

2020 charges, 2023 felony charges), making defamatory statements, interfering with Plaintiffs' participation in the GLFC and LEPMAG, and attempting to revoke Plaintiffs' commercial fishing licenses.

30. These adverse actions were motivated, in substantial part, by Plaintiffs' exercise of their First Amendment rights, and were taken with the intent and purpose of chilling Plaintiffs' exercise of such rights and punishing them for engaging in protected activities.

31. The right to be free from governmental retaliation for exercising First Amendment rights was clearly established at all relevant times, and a reasonable official would have known that the alleged conduct violated these rights.

32. As a direct and proximate result of these Defendants' unconstitutional retaliatory actions, Plaintiffs suffered damages as set forth below.

**COUNT TWO**

**Violation of 42 U.S.C. § 1983 – Fourteenth Amendment Due Process – Malicious Prosecution & Fabrication of Evidence**

**Against ODNR Defendants Mertz, Walker, Leibengood, Hartman in their Individual Capacities**

33. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

34. Plaintiffs had a protected property interest in their commercial fishing license.

35. ODNR Defendants Mertz, Walker, Leibengood, and Hartman, acting individually and in conspiracy, under color of state law, initiated, instigated, influenced, and/or continued multiple criminal proceedings against Plaintiffs without probable cause and with malice, thereby violating Plaintiffs' Fourteenth Amendment rights to due process.

36. In doing so, these Defendants deliberately fabricated evidence and presented false information, including but not limited to:

   a.     Falsely attributing the completion and contents of the telemetry tag reporting

23

form to Plaintiffs;

b. Making false statements in official investigatory reports;

c. Presenting false testimony or making false representations in court proceedings;

d. Pursuing charges based on inapplicable or baseless interpretations of law; and

e. Concealing material exculpatory or impeachment evidence.

37. These actions were undertaken for improper purposes, including retaliation, personal animus, discrimination, and the desire to eliminate Plaintiffs from the commercial fishing industry.

38. The fabrication of evidence and presentation of false testimony contravenes the notion of due process.

39. The criminal proceedings were terminated in Plaintiffs' favor.

40. The right to be free from criminal prosecution initiated or continued without probable cause and based upon evidence deliberately fabricated by state actors is a clearly established right secured by the Fourth and Fourteenth Amendments.

41. Furthermore, the Defendants' pattern of conduct involves repeated baseless prosecutions, deliberate fabrication and concealment of evidence, and perjury shocked the conscience, constituting a violation of substantive due process.

42. As a direct and proximate result of these Defendants' unconstitutional actions, Plaintiffs suffered damages as set forth below.

### COUNT THREE
**Violation of 42 U.S.C. § 1983 – Fourteenth Amendment Equal Protection**
**Against ODNR Defendants Mertz, Walker, Leibengood, Hartman in their Individual Capacities**

43. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

44. Defendants Mertz, Walker, Collingwood, Leibengood, Hadsell, and Hartman, acting

24

under color of state law, intentionally and arbitrarily treated Plaintiffs differently from other similarly situated commercial fishermen without any rational basis, constituting "class of one" discrimination.

45. This differential treatment included selective enforcement, targeted investigations, repeated baseless arrests and prosecutions, and a concerted effort to drive Plaintiffs specifically out of the industry.

46. This disparate treatment was motivated by illegitimate factors, including personal animus, retaliation, and/or an irrational desire to eliminate Plaintiffs and commercial fishing, rather than any legitimate government purpose.

47. The right to be free from such arbitrary and irrational discrimination by state actors was clearly established under the Equal Protection Clause.

48. As a direct and proximate result of these Defendants' denial of equal protection, Plaintiffs suffered damages as set forth below.

## COUNT FOUR
**Violation of 42 U.S.C. § 1983 and 1985 – Conspiracy to Violate Civil Rights**
**Against ODNR Defendants Mertz, Walker, Leibengood, Hartman in their Individual Capacities**

49. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

50. Defendants Mertz, Walker, Leibengood, and Hartman reached a mutual understanding or agreement to act in concert to deprive Plaintiffs of their rights secured by the First, Fourth, and Fourteenth Amendments.

51. The object of the conspiracy was to unlawfully harass, intimidate, retaliate against, and drive Plaintiffs out of business through abuse of official powers.

52. In furtherance of this conspiracy, these Defendants engaged in numerous overt acts, including coordinating baseless investigations, fabricating evidence, concealing

evidence, making false statements, selectively enforcing and purposely misinterpreting laws, making defamatory statements, violating court orders, and improperly interfering with Plaintiffs' livelihood.

53. These actions were taken willfully under color of state law and intended to injure Plaintiffs in the exercise of their constitutional rights.

54. As a direct and proximate result of this conspiracy, Plaintiffs suffered damages as set forth below.

## COUNT FIVE
### Violation of 42 U.S.C. § 1983 – Supervisory Liability / Failure to Intervene
### Against ODNR Defendants Mertz, Walker, Leibengood in their Individual Capacities

55. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

56. Defendants Mertz, Walker, and Leibengood held supervisory positions over subordinates (including Hadsell, Hartman, Brockman, Good, Bury) who engaged in unconstitutional conduct alleged herein.

57. These supervisory Defendants had actual or constructive knowledge of the pattern of misconduct and constitutional violations being perpetrated against Plaintiffs by their subordinates, arising from direct complaints, the repetition of baseless prosecutions, public reports, internal information, and court findings.

58. Despite this knowledge, these supervisory Defendants acted with deliberate indifference to Plaintiffs' constitutional rights by:

   a. Failing to adequately supervise, train, or discipline subordinates;

   b. Establishing, encouraging, authorizing, or knowingly acquiescing in unconstitutional policies or customs;

   c. Failing to take necessary remedial action; and/or

   d. Personally failing to intervene to prevent known constitutional violations

26

(particularly Leibengood).

59. This deliberate indifference was a direct cause of the constitutional deprivations suffered by Plaintiffs. The duty of supervisors to remedy known patterns of constitutional violations was clearly established.

60. As a direct and proximate result of these supervisory Defendants' deliberate indifference, Plaintiffs suffered damages as set forth below.

## COUNT SIX

### State Law Claim – Malicious Prosecution

**Against ODNR Defendants Mertz, Walker, Leibengood, Hartman in their Individual Capacities**

61. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

62. Defendants Mertz, Walker, Leibengood, and Hartman, and maliciously instituted, procured, or continued criminal proceedings against Plaintiffs without probable cause.

63. These proceedings were terminated in Plaintiffs' favor.

64. These Defendants acted with malice, meaning for an improper purpose such as hostility, retaliation, harassment, discrimination, or intent to injure Plaintiffs, rather than to bring offenders to justice.

65. The actions of these Defendants were undertaken with malicious purpose, in bad faith, and/or in a wanton or reckless manner, falling outside the scope of any potential statutory immunity under Ohio Revised Code § 2744.03(A)(6).

66. As a direct and proximate result of these Defendants' malicious prosecution, Plaintiffs suffered damages as set forth below.

## COUNT SEVEN

### State Law Claim – Abuse of Process

**Against ODNR Defendants Mertz, Walker, Leibengood, Hartman in their Individual Capacities**

67. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

68. Defendants Mertz, Walker, Leibengood, and Hartman utilized legal processes against Plaintiffs primarily to accomplish an ulterior purpose for which the processes were not designed, namely to harass, intimidate, retaliate against, defame, interfere with the business of, and attempt to eliminate Plaintiffs from the commercial fishing industry.

69. In furtherance of this ulterior purpose, these Defendants committed specific acts constituting a perversion of legal process, such as causing arrests on fabricated charges, conducting searches beyond warrant authority, procuring indictments based on fabricated evidence, making false representations to the court, discovery abuses, and issuing defamatory press releases concurrent with charges.

70. These Defendants acted with malicious purpose, in bad faith, and/or in a wanton or reckless manner, falling outside the scope of any potential statutory immunity.

71. As a direct and proximate result of these Defendants' abuse of process, Plaintiffs suffered damages as set forth below.

## COUNT EIGHT
### State Law Claim – Defamation (Libel and Slander)
**Against ODNR Defendants Mertz, Walker, Hartman, Leibengood in their Individual Capacities**

72. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

73. Defendants Mertz, Walker, Hartman, and Leibengood made, published, or caused published false and defamatory statements of fact concerning Plaintiffs to third parties.

74. These false and defamatory statements included, but are not limited to:

   a. Public accusations that Michael Szuch was a major poaching suspect;

   b. Defendant Collingwood's statements that enforcement issues "only pertain to the Szuch's";

  c.  ODNR's April 2020 news release containing false assertions about abuse/wanton waste and harming a muskellunge;

  d.  Defendant Hartman's alleged false statements to GLFC members leading to Holly Szuch's removal;

  e.  Defendant Hartman's alleged false statements to LEPMAG members regarding the Oregon court's ruling; and

  f.  False statements by Defendant Leibengood in official reports asserting Michael Szuch reported catching the tagged fish and falsified data.

  g.  Walker and the other ODNR Defendants false statements to LEPMAG members leading to Holly Szuch's removal from LEPMAG

75. These statements were false, published, unprivileged, and injured Plaintiffs' reputations and business (defamation per se).

76. These Defendants made these statements with knowledge of their falsity or reckless disregard for the truth (actual malice), and/or with malicious purpose, in bad faith, or in a wanton or reckless manner, falling outside the scope of any potential statutory immunity.

77. As a direct and proximate result of these Defendants' defamatory statements, Plaintiffs suffered damages as set forth below.

## COUNT NINE

**State Law Claim – Intentional Infliction of Emotional Distress**

**Against ODNR Defendants Mertz, Walker, Leibengood, Hartman in their Individual Capacities**

78. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

79. Defendants Mertz, Walker, Leibengood, and Hartman engaged in a pattern of conduct toward Plaintiffs that was extreme and outrageous.

80. This conduct included a sustained campaign of harassment, baseless arrests, malicious prosecutions based on fabricated evidence, false public accusations, unlawful entry, perjury by state officials, violation of court orders, interference with professional appointments, and causing Plaintiffs to live in constant fear.

81. These Defendants intended to cause Plaintiffs severe emotional distress or acted with reckless disregard of the probability of causing such distress.

82. Cumulative conduct was beyond all possible bounds of decency and utterly intolerable in a civilized community, undertaken with malicious purpose, in bad faith, and/or in a wanton or reckless manner, falling outside the scope of any potential statutory immunity.

83. As a direct and proximate result, Plaintiffs Michael Szuch and Holly Szuch suffered severe emotional distress and related damages.

### COUNT TEN

**State Law Claim – Tortious Interference with Business Relationships**
**Against ODNR Defendants Mertz, Walker, Hartman, Leibengood in their Individual Capacities**

84. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

85. Plaintiffs had existing and prospective business and professional relationships (including their fishing operation, licenses, customer relationships, and standing within GLFC/LEPMAG).

86. Defendants Mertz, Walker, Hartman, and Leibengood knew of these relationships.

87. These Defendants intentionally and improperly interfered with these relationships through independently tortious or unlawful actions, without justification, including but not limited to:

   a.   Making false/defamatory statements to GLFC/LEPMAG members (Mertz,

30

Walker, Hartman);

b.      Initiating baseless prosecutions/enforcement actions to disrupt business and harm reputation (Mertz, Walker, Leibengood, Hartman);

c.      Selectively enforcing regulations (Collingwood, Hadsell);

d.      Disclosing confidential catch information (implicating Officer Bury/Leibengood); and

e.      Engaging in a pattern of harassment designed to drive Plaintiffs out of business (Mertz, Walker, Leibengood, Hartman).

88. These Defendants' actions lacked justification and were undertaken with malicious purpose, in bad faith, and/or in a wanton or reckless manner, using improper means, falling outside the scope of any potential statutory immunity.

89. As a direct and proximate result, Plaintiffs suffered damage including lost income, loss of professional appointments, damage to goodwill, and other economic losses.

**COUNT ELEVEN**

**State Law Claim – Civil Conspiracy**

**Against ODNR Defendants Mertz, Walker, Leibengood, Hartman in their Individual Capacities**

90. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

91. Defendants Mertz, Walker, Leibengood, and Hartman, engaged in a malicious combination or conspiracy to commit tortious and unlawful acts against Plaintiffs.

92. The underlying tortious acts included malicious prosecution, abuse of process, defamation, intentional infliction of emotional distress, tortious interference, and constitutional violations.

93. These Defendants committed numerous unlawful, overt acts in furtherance of the conspiracy.

94. The conspiracy involved actions taken with malicious purpose, in bad faith, and/or in a wanton or reckless manner, falling outside the scope of any potential statutory immunity.

95. As a direct and proximate result, Plaintiffs suffered actual damage as previously alleged.

## COUNT TWELVE

**State Law Claim – Negligent / Reckless / Bad Faith Supervision and Retention**
**Against ODNR Defendants Mertz, Walker, Leibengood in their Individual Capacities.**

96. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

97. Defendants Mertz, Walker, and Leibengood, as supervisors, had a duty to act without malicious purpose, bad faith, or wanton/reckless disregard for Plaintiffs' rights in the supervision and retention of subordinates.

98. These supervisory Defendants knew or should have known of the propensity of their subordinates (including Hadsell, Hartman, Hebebrand, Fortunato, Bury, Brockman, Good) to engage in the wrongful conduct alleged herein, based on specific notice instances detailed previously.

99. Despite this knowledge, these supervisory Defendants breached their duty by failing to take adequate corrective action, implement proper training/policies, discipline subordinates, or by continuing to employ them, thereby ratifying, or acquiescing in the misconduct negligently, recklessly, in bad faith, or with malicious purpose.

100. This failure demonstrated malicious purpose, bad faith, or wanton/reckless disregard for Plaintiffs' rights, falling outside the scope of statutory immunity under R.C. 2744.03(A)(6).

101. As a direct and proximate result, Plaintiffs suffered damages as previously alleged.

## COUNT THIRTEEN

### Claim for Declaratory and Injunctive Relief

### Against ODNR Defendants Mertz, Walker, Collingwood, Leibengood, Hartman in their Official Capacities

102. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

103. An actual, justiciable controversy exists between Plaintiffs and Defendants regarding the legality and constitutionality of Defendants' past and potentially ongoing actions, policies, customs, and practices.

104. Plaintiffs seek a declaration from this Court, pursuant to 28 U.S.C. § 2201, that Defendants' actions, policies, and practices violated Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments and applicable state laws.

105. Plaintiffs have suffered irreparable harm and reasonably fear continued unlawful actions by Defendants, lacking an adequate remedy at law.

106. Pursuant to Fed. R. Civ. P. 65, Plaintiffs seek preliminary and permanent injunctive relief prohibiting Defendants, their agencies, agents, employees, successors, and all persons acting in concert with them, from:

    a. Engaging in further harassment, intimidation, surveillance, or retaliation against Plaintiffs;

    b. Initiating investigations or prosecutions against Plaintiffs without legitimate probable cause based on credible, non-fabricated evidence, unrelated to any retaliatory or discriminatory motive;

    c. Selectively enforcing laws or regulations against Plaintiffs;

    d. Making false, defamatory, or harassing statements about Plaintiffs;

    e. Unlawfully interfering with Plaintiffs' business operations or licenses;

    f. Failing to implement adequate policies, training, and oversight to prevent

recurrence of the violations alleged herein; and

g.      Failing to properly investigate misconduct complaints.

## VI.  **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally where appropriate, granting the following relief:

A.      Awarding compensatory damages in an amount exceeding $100,000 to be determined at trial, sufficient to fully compensate Plaintiffs for their economic losses (including lost profits, business value, business value, and expenses), damage to reputation, severe emotional distress, personal injury, loss of consortium, and other injuries proximately caused by Defendants' wrongful conduct;

B.      Awarding punitive damages against the individual Defendants (Mertz, Walker, Leibengood, Hartman) in their individual capacities in an amount sufficient to punish their malicious, reckless, wanton, and outrageous conduct and to deter similar conduct in the future;

C.      Issuing declaratory relief as set forth in Count Thirteen, declaring that Defendants' actions, policies, and practices violated Plaintiffs' constitutional and state law rights;

D.      Issuing preliminary and permanent injunctive relief as set forth in Count Thirteen, prohibiting Defendants from engaging in further unlawful conduct against Plaintiffs;

E.      Awarding Plaintiffs their reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

F.      Awarding Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

G.      Granting such other and further relief as this Court deems just, equitable, and proper.

34

## JURY DEMAND ENDORSED HEREON

Plaintiffs hereby demand a trial by jury on all claims and issues so triable as a matter of right.

Respectfully submitted,

_____
ERIK J. WINELAND (0072088)
**Rohrbacher Trimble &**
 **Zimmerman Co., LPA**
405 Madison Ave., 8th Floor
Toledo, OH  43604
Phone (419) 248-2615
Fax (419) 248-2614
ewineland@rtz-law.com
*Attorney for Plaintiffs*

35